**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF SOUTH CAROLINA**

| | |
|---|---|
| In re, | Case No. 09-04740-dd |
| Charles E. Riley, | Chapter 7 |
| | **ORDER SUSTAINING TRUSTEE'S OBJECTION TO DEBTOR'S EXEMPTIONS** |
| Debtor. | |

This matter comes before the Court on the objection of the Chapter 7 Trustee ("Trustee") entered October 15, 2012, to exemptions claimed by the debtor, Charles E. Riley ("Debtor") on his schedules. Debtor filed a response in opposition to the objection. The Court held a hearing on December 4, 2012, at which it heard arguments and directed the parties to submit supplemental briefing. Both the Trustee and Debtor submitted supplemental briefs. After careful consideration, the Court issues the following findings of fact and conclusions of law with respect to the Chapter 7 Trustee's objection to Debtor's claimed exemptions.

**FINDINGS OF FACT**

In December 2004, Debtor and Tessa Spigner executed and delivered two notes and mortgages to New Century Mortgage Corporation ("New Century"). The mortgaged property was Debtor's residential property located at 34 Crossbow Lakes Court, Columbia, South Carolina. Ms. Spigner has an interest in the real property but is not otherwise involved in these proceedings. New Century filed a chapter 11 bankruptcy case on April 2, 2007 in the United States Bankruptcy Court, District of Delaware. In October 2007, New Century assigned the notes and mortgages to Deutsche Bank National Trust Company, as Trustee for Carrington Mortgage Loan Trust, Series 2005-NC1 Asset Backed Pass-Through Certificates ("Carrington

Mortgage"), and the assignments were recorded on October 30, 2007, and November 13, 2007, respectively.

The mortgages executed by Debtor and Ms. Spigner required them to maintain insurance on the property. However, the mortgagors failed to do so, and effective July 17, 2007, Carrington Mortgage, as it was permitted to do under the terms of the mortgages, obtained an insurance policy on the residence through Safeco Insurance ("Safeco"). Debtor purchased a casualty insurance policy from Nationwide Insurance Company ("Nationwide") on July 23, 2007. Carrington Mortgage was listed as a loss payee on the Nationwide policy. On August 1, 2007, a fire destroyed the residence. On August 9, 2007, Carrington Mortgage cancelled the Safeco policy and subsequently requested that Safeco retroactively adjust the cancellation date to July 23, 2007, the effective date of the Nationwide insurance policy purchased by Debtor.

On September 11, 2007, Nationwide issued a check for the fire loss in the amount of $289,000, jointly payable to Debtor and Carrington Mortgage. The check was not cashed before it became stale, and Nationwide issued another check on May 5, 2009 for the same amount, again jointly payable to Debtor and Plaintiff. That check was deposited into Debtor's Bank of America account on May 11, 2009 and contained the signature of Debtor and a stamped indorsement, "Carrington Mortgage for Deposit Only."

Debtor commenced litigation against Safeco and Nationwide in the Court of Common Pleas for Lexington County, South Carolina in 2008, *Charles E. Riley v. Safeco Insurance and Nationwide Property and Casualty Insurance Company*, No. 2008-CP-32-00851, seeking a determination that the insurance policies overlapped, that he alone was entitled to recover from Nationwide, and that Carrington Mortgage was entitled to recover from Safeco. The state court granted summary judgment both to Safeco and Nationwide, finding that Safeco's policy was not

2

in effect at the time the fire occurred, and that even if it had been, an "escape clause" in the policy which provided that the insurance policy would not apply if other insurance was in place prevented recovery from Safeco. With respect to Nationwide, the court found that the Nationwide policy provided coverage for the fire loss and that the language of Nationwide's policy required it to make the check payable to Carrington as a joint payee and that Debtor had no grounds for arguing that the check should be payable to him only; thus, it found that the check issued to both Debtor and Carrington Mortgage was proper.

Debtor filed the present bankruptcy proceeding on June 29, 2009, under chapter 13 of the Bankruptcy Code. Debtor's second amended Statement of Financial Affairs ("SOFA"), filed on September 15, 2009, lists $478,000 as "2007 income from insurance company due to house fire. $190,000 went to home contractor to begin rebuilding." Separately, the SOFA lists $289,000 as "2009 funds from insurance company to build house. Note: $100,000 listed on Schedule B. Remaining amount has been distributed to builder." Schedule B, filed July 13, 2009, lists $100,000 in a checking account with Bank of America and states, "Note: all funds are from insurance proceeds to build a house."

Debtor's Schedule C, filed July 13, 2009, claims an exemption in "checking with BOA" of $51,450 under S.C. Code Ann. § 15-41-30(A)(1), which is otherwise known as the homestead exemption. In his objection to Debtor's claimed exemptions, the Trustee asserts that he recovered funds from a certificate of deposit ("CD") at Bank of America, not a checking account, and that the amount was $137,561.26, not $100,000. On November 28, 2012, Debtor filed an amended Schedule B listing $137,561.26 located in a Bank of America CD account. Debtor also filed an amended Schedule C, reflecting Debtor's claim that $51,450 of the $137,561.26 is exempt under S.C. Code Ann. § 15-41-30(A)(1) and $1,725 is exempt under S.C.

3

Code Ann. § 15-41-30(A)(7). These funds in the Bank of America CD account that the parties agree is insurance proceeds from the fire and Debtor's claimed exemptions in those proceeds is the subject of the Trustee's objection before the Court and an adversary proceeding Carrington Mortgage pursued against Debtor.

On December 21, 2009, this Court entered a Supplemental Order on a motion to convert Debtor's case to a proceeding under chapter 7 of the Bankruptcy Code filed by the Chapter 13 Trustee and a motion to dismiss filed by Debtor.[1] (Docket # 72). In that Order, the Court found that this was Debtor's third bankruptcy filing. His first case, No. 06-05120-jw, was filed on November 8, 2006, and dismissed on March 9, 2007, for failing to provide documents to the Chapter 13 Trustee. His second case, No. 07-01838-dd, was filed on April 4, 2007, and was dismissed on October 10, 2007, for failure to make adequate and timely payments. This second dismissal was with prejudice as to any filing under chapter 13 for a period of one year. During this prejudice period, Tessa D. Spigner, co-owner of 34 Crossbow Lakes Court property, filed a voluntary chapter 13 bankruptcy proceeding to prevent foreclosure by Debtor's creditors. *See In re Spigner*, No. 08-02674-dd, slip op. (Bankr. D.S.C. Aug. 3, 2009) (dismissing case for non-payment).

In the Supplemental Order, the Court also found that Debtor's disclosures about the insurance proceeds on his September 15, 2009 SOFA were inconsistent with his testimony that he received $198,000 in 2007 for the contents of his home destroyed in the fire and $289,000 in 2009 for damage to the house. The Court concluded Debtor's actions in the case had reached "the level of egregious conduct warranting denial of Debtor's motion to dismiss." In describing this conduct, the Court stated:

---

[1] The Court entered an earlier Order on December 15, 2009, which granted the motion to convert and denied the motion to dismiss. (Docket # 61).

4

> Debtor is a serial filer. This is Debtor's third bankruptcy filing since November of 2006. Both of Debtor's previous cases were dismissed without any dividend being paid to Debtor's unsecured creditors. Additionally, Debtor's conduct in this case demonstrates a pattern of continued abuse of the bankruptcy system. Debtor has been uncooperative with the Trustee in as much as he has failed to provide documents in a timely manner or in some cases, not at all. Debtor claims to have paid $90,000 to a builder for the reconstruction of his residence, but will not disclose the name of this builder. Debtor's testimony regarding how he spent $198,000 he received for the contents of his house lacked credibility. He claims that the money was spent on clothes and otherwise, without elaboration. Further, Debtor's testimony regarding his receipt of the $289,000 insurance check, Carrington's endorsement of that check, and his deposit lacks credibility.

The Court granted the Chapter 13 Trustee's motion to convert Debtor's case to a proceeding under chapter 7 and noted the Chapter 13 Trustee's argument that conversion would allow the money remaining in the Bank of America account to be distributed on a pro rata basis among creditors.

After Debtor's case was converted to chapter 7, the United States Trustee ("U.S. Trustee") filed an adversary proceeding, No. 10-80016-dd, pursuant to 11 U.S.C. § 727 seeking to deny Debtor's discharge. Debtor did not file a responsive pleading to the U.S. Trustee's complaint initiating the adversary proceeding. On March 17, 2010, the Court entered an Order denying Debtor's discharge. (Docket # 95 in No. 09-04740-dd). The Court found that Debtor failed to truthfully disclose assets in his schedules, that Debtor testified he could not provide the name of an individual to whom he gave $90,000 in cash, and that he could not account for $152,250 missing from a $289,000 check he deposited with Bank of America. The Court concluded that Debtor's actions were improper and justified denying his discharge.

In the adversary proceeding initiated by Carrington Mortgage, No. 11-80115-dd, the Court entered an Order on September 26, 2012, following a trial. The Order recounted Debtor's testimony that after his home burned and due to pressure from the neighborhood homeowners' association, he paid $45,000 to a demolition company to tear down the house. Debtor also

5

testified he found a flyer in his mailbox providing the name of a contractor offering to construct a new home. He then contacted the contractor and paid him between $75,000 and $80,000 to begin construction. He testified that a few weeks later, he was unable to find the contractor, and no progress had been made on a new home. In the Order, the Court found that Debtor did not have standing to object to Carrington Mortgage's proofs of claim or attack the assignment of his notes and mortgages from New Century to Carrington and that Carrington had not established an equitable lien in the insurance proceeds held in the Bank of America account.[2] Because an equitable lien was not established, the Court concluded the funds were incontrovertibly property of the bankruptcy estate and gave the Trustee thirty days to file his objection, if any, to Debtor's claimed exemption in the insurance proceeds. The Trustee filed the objection that is now before the Court for consideration.

## CONCLUSIONS OF LAW

When a debtor files a bankruptcy petition, an estate is created comprised of "all legal or equitable interests of the debtor in property as of the commencement of the case." 11 U.S.C. § 541(a)(1). The Bankruptcy Code gives debtors the ability to exempt certain property from the estate. 11 U.S.C. § 522(b)(1). "Section 522(b)(1) of the Code offers the debtor a choice between exempting either the property specified in § 522(d) or the property protected by federal

---

[2] In the September 26, 2012 Order, the Court described Debtor's testimony regarding the indorsement of the insurance proceeds check at the earlier hearing on the Chapter 13 Trustee's motion to convert:
> At the hearing on the Motion to Convert, [Debtor] testified that [Carrington Mortgage] sent him the check by mail, he sent it back to [Carrington Mortgage]'s loss mitigation department, where it was signed and mailed back to him to cash. In response to further questioning regarding the timing of the issuance and deposit of the check, [Debtor] testified that after the check was issued on May 5th and mailed to him, he sent the check by overnight mail to [Carrington Mortgage], and [Carrington Mortgage] sent it back by overnight mail, such that he was able to deposit the check on May 11. [Debtor] testified that he did not sign [Carrington Mortage]'s indorsement on the check but did not know who did.

6

nonbankruptcy law or state law, 'unless the State law that is applicable to the debtor . . . specifically does not so authorize.'" *In re Robinson*, 292 B.R. 599, 607 (Bankr. S.D. Ohio 2003) (quoting 11 U.S.C. § 522(b)(2)). South Carolina has opted out of the federal exemptions and has set forth its own system of exemptions. *See* S.C. Code Ann. §§ 15-41-30; 15-41-35. Under South Carolina law, a debtor may claim a homestead exemption in "[t]he debtor's aggregate interest, not to exceed fifty thousand dollars in value, in real property or personal property that the debtor or a dependent of the debtor uses as a residence . . . ." S.C. Code Ann. § 15-41-30(A)(1). A debtor may also claim an exemption in "[t]he debtor's aggregate interest in any property, not to exceed five thousand dollars in value of an unused exemption amount to which the debtor is entitled pursuant to" S.C. Code Ann. § 15-41-30(A)(1) through (6) (the "wildcard exemption"). S.C. Code Ann. § 15-41-30(A)(7). "The maximum amount of the[se] exemption[s] is periodically adjusted by the State Budget and Control Board." *In re Lafferty*, 469 B.R. 235, 244 (Bankr. D.S.C. 2012); *see also* S.C. Code Ann. § 15-41-30(B). At the time Debtor filed bankruptcy in 2009, the maximum homestead exemption for an individual was $51,450.

The rationale behind the exemptions set forth in § 15-41-30 is "to protect from creditors a certain portion of the debtor's property." *Cerny v. Salter*, 429 S.E.2d 809, 811 (S.C. 1993). An exemption in property goes hand in hand with a discharge of indebtedness to provide honest debtors with a fresh start free from pre-bankruptcy obligations. *See Wright v. Union Cent. Life Ins. Co.*, 304 U.S. 502, 514 (1938). Exemptions find a genesis in the public policy of preserving for debtors certain property that is free from creditor claims, levy, and attachment. "'The historical purpose of . . . exemption laws has been to protect a debtor from his creditors, to provide him with the basic necessities of life so that even if his creditors levy on all of his

7

nonexempt property, the debtor will not be left destitute and a public charge.'" *In re Morehead*, 283 F.3d 199, 206 (4th Cir. 2002) (alteration in original) (quoting H.R. Rep. No. 95-595, at 126 (1977), *reprinted in* 1978 U.S.C.C.A.N. at 6087)). As a general proposition, these exemptions are construed liberally in favor of the debtor. *See Ex parte Morrow*, 190 S.E. 506, 508 (S.C. 1937).

The Trustee asserts three grounds upon which he argues Debtor's claimed exemptions should be disallowed:

(1) S.C. Code Ann. §15-4-30(A)(1) exempts "real or personal property that the debtor or a dependant of the debtor uses as a residence . . . ." The exemption claimed is in a bank account and does not qualify as an exemption under this code section.

(2) The Trustee recovered funds held by Bank of America (BOA) in the amount of $137,561.26. These funds however were in a Certificate of Deposit at the Bank of America, and were not in a checking account. The trustee has recovered no funds from a checking account at Bank of America.

(3) The Debtor comes into this Court without "clean hands" and his claim of exemption of funds being held by the Trustee should be denied under the equitable powers of the Court.

The Trustee's second objection was resolved by the amended schedules Debtor filed on November 28, 2012, and the Trustee is no longer asserting the exemptions should be disallowed solely on this ground.

**a. Unclean hands**

"The doctrine of unclean hands is based on the equitable maxim which states, '[w]hoever comes into equity must come with clean hands.'" *Lafferty*, 469 B.R. at 245 (quoting *In re King*, No. 10-05756-dd, 2010 WL 5173191, at *4 (Bankr. D.S.C. Sept. 13, 2010)). "This maxim illustrates the principle that the court will not grant relief to a party who has engaged in wrongful, illegal, or unethical acts." *King*, 2010 WL 5173191, at *4; *see also In re Janssens,* 449 B.R. 42, 65 (Bankr. D. Md. 2010) ("The purpose of the unclean hands doctrine is to prevent

8

a court from aiding or abetting a party in the commission of a fraud or other misconduct."); *In re Jake's on the Pike,* 78 B.R. 461, 463 (Bankr. E.D. Va. 1987) ("The Bankruptcy Court is unquestionably a court of equity.  The familiar maxim that he who comes into equity must come with clean hands means that a litigant cannot call upon a court of equity to grant him extraordinary relief if he himself has been guilty of . . . inequitable or unconscionable conduct." (internal quotation marks omitted)).  "A court can deny relief under the doctrine of unclean hands only when there is a close nexus between a party's unethical conduct and the transactions on which that party seeks relief."  *In re Uwimana*, 274 F.3d 806, 810 (4th Cir. 2001); *see also Janssens*, 449 B.R. at 65 ("'The primary principle guiding application of the unclean hands doctrine is that the alleged inequitable conduct must be connected, *i.e.*, have a relationship, to the matters before the court for resolution.  We will not refuse relief to a party merely because it has engaged in misconduct which is unrelated to its claims before the court.'" (quoting *New Valley Corp. v. Corp. Prop. Assocs. 2 & 3*, 181 F.3d 517, 525 (3d Cir. 1999))).

Here, the Court concludes that Debtor has unclean hands and there is a close nexus between the relief he is seeking and his misconduct.  Debtor claims a $51,450 homestead exemption and a $1,725 wildcard exemption in the $137,561.26 held in the Bank of America CD account.  The parties agree this money is identifiable insurance proceeds from a fire that destroyed Debtor's residence.  This Court has previously held that Debtor failed to properly account for the rest of the insurance proceeds that were distributed after the fire.  Specifically, in the December 21, 2009 Supplemental Order granting the Chapter 13 Trustee's motion to convert and denying Debtor's motion to dismiss, the Court found that Debtor claimed to have paid $90,000 to a builder for the reconstruction of his residence but would not disclose the name of this builder; that his testimony regarding how he spent $198,000 he received for the contents of

9

his house lacked credibility; and that his testimony regarding his receipt of the $289,000 insurance check, Carrington's endorsement of that check, and his deposit of the check lacked credibility. Moreover, in the March 17, 2010 Order denying Debtor's discharge, the Court concluded Debtor acted improperly in failing to provide the U.S. Trustee with sufficient information to identify and locate the person to whom Debtor claimed he gave $90,000 in cash and in failing to account for $152,250 of the $289,000 check he received. The Court also found that Debtor failed to truthfully disclose assets in his schedules, including: listing in his schedules the amount of fire insurance proceeds in the Bank of America account at $100,000 when the amount was $136,750; not listing a 2008 Lexus; listing the value of his clothing at $500 when he later testified at his Bankruptcy Rule 2004 examination that the value was between $20,000 and $30,000; and indicating on his schedules that he did not hold interests in any businesses when later he testified at his Rule 2004 examination that he held interests in businesses. These findings constitute the law of this case. *See TFWS, Inc. v. Franchot*, 572 F.3d 186, 191 (4th Cir. 2009) ("The law of the case doctrine posits that when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case." (citation and internal quotation marks omitted)). While the law of the case doctrine does not "limit the power of a court to reconsider an earlier ruling," Debtor has not presented evidence or a basis for this Court to alter its previous findings. *Am. Canoe Ass'n, Inc. v. Murphy Farms, Inc.*, 326 F.3d 505, 515 (4th Cir. 2003). In sum, the Court concludes it would be inequitable to allow Debtor to keep an additional $51,450 in insurance proceeds when already he has failed to be forthright and properly account for $349,438.74 worth of proceeds paid after the fire and failed to truthfully disclose other assets. Therefore, Debtor is not entitled to a homestead exemption under S.C. Code Ann. § 15-41-30(A)(1) or a wildcard exemption under § 15-41-30(A)(7) in the

funds held in the Bank of America CD account. *See Lafferty*, 469 B.R. at 246 (disallowing homestead exemption based on unclean hands doctrine); *In re Sanford*, No. 09-01116-jw, slip op., at 7 (Bankr. D.S.C. Oct. 1, 2009) ("[T]he Court may deny a debtor's exemption where the debtor, either intentionally or with reckless disregard for the truth, failed to disclose assets of the bankruptcy estate."); *In re Vidis*, No. 08-03242-dd, slip op., at 5 (Bankr. D.S.C. Feb. 23, 2009) ("At the discretion of the Court, a debtor's exemptions may be denied where the Court determines that the debtor, with reckless disregard, failed to disclose all assets of the bankruptcy estate."); *In re Cooper*, No. 03-00900-W, slip op., at 3 (Bankr. D.S.C. May 7, 2003) (sustaining the U.S. Trustee's objection to debtors' claim of exemption in a tax refund because the debtors failed to amend their schedules to disclose the refund).

**b. Whether the homestead exemption extends to fire insurance proceeds**

The Trustee also argues Debtor's claimed homestead exemption should be disallowed because S.C. Code Ann. § 15-41-30(A)(1) does not extend to fire insurance proceeds of a debtor's interest in real property or personal property that the debtor uses as a residence. Debtor asserts the homestead exemption does extend to fire insurance proceeds. The parties agree the issue is one of first impression under South Carolina law. Several subsections of S.C. Code Ann. § 15-41-30(A) explicitly state the exemption described therein extends to proceeds. *See* S.C. Code Ann. § 15-41-30(A)(11), (12). Moreover, there is an exemption in cash and other liquid assets available to individuals who do not claim a homestead exemption, but the maximum amount of this exemption in cash and other liquid assets is significantly less than the maximum homestead exemption. *See* S.C. Code Ann. § 15-41-30(A)(5). In addition, the homestead exemption under the federal exemption scheme does not explicitly extend to proceeds. *See* 11 U.S.C. § 522(d)(1); *see generally* 3 William L. Norton, Jr., *Norton Bankruptcy Law and Practice*

11

§ 56:10 (3d ed.). While the Court notes the issue, the Court does not need to rule on it in light of the finding that Debtor's claimed homestead exemption is disallowed under the unclean hands doctrine.

## CONCLUSION

For the reasons set forth herein, the Trustee's objection is sustained, and the exemptions Debtor claims in the fire insurance proceeds held in the Bank of America CD account are disallowed. As a result, the entirety of the funds being held in the CD account is property of the bankruptcy estate and may be distributed by the Trustee in accordance with all applicable laws and regulations.

AND IT IS SO ORDERED.

**FILED BY THE COURT**
**02/25/2013**



Entered: 02/26/2013

David R. Duncan
US Bankruptcy Judge
District of South Carolina